1  Christopher K. Monelt, Esq. - Bar No. 224478
   THE SOUTHERN CALIFORNIA INJURY LAW GROUP
2  2667 Camino Del Rio South, #314
   San Diego, CA 92108
3  Ph: (858) 344-1924; Fax: (619) 793-1023
4  Email:  Socalinjurylawgroup@gmail.com

5  Attorney for Plaintiff, JARED WHITE

6              **UNITED STATES DISTRICT COURT**

7      **CENTRAL DISTRICT OF CALIFORNIA EASTERN DIVISION**

8                                          )
                                           )   Case No.:
9                                          )
   JARED WHITE, an individual,             )   **PLAINTIFF'S COMPLAINT FOR**
10                                         )   **DAMAGES**
                Plaintiff,                 )
11                                         )
          vs.                              )
12                                         )
   AMAZON.COM SERVICES LLC, a              )
13 Delaware limited liability company;     )
   AMAZON.COM, INC., a Delaware            )
14 corporation, and DOES 1-10, inclusive,  )
                                           )
15              Defendants.                )
16 _____ )

17

18

19              **COMPLAINT FOR DAMAGES**

20

21      Plaintiff, JARED WHITE, by and through their attorneys of record herein, brings this

22 Complaint against the above-mentioned Defendants, and in support thereof alleges the following.

23              **Preliminary Statement**

24 1.  This is a civil rights and employment action brought under the Americans with Disabilities

25     Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., and the California Fair Employment and

26     Housing Act ("FEHA"), Cal. Gov. Code § 12900 et seq., for redress of unlawful

27

28                          1

discrimination, harassment, retaliation, and wrongful termination suffered by Plaintiff **Jared White**, a significantly autistic individual with a co-occurring anxiety disorder.

2. Plaintiff was employed by **Amazon.com Services LLC**, a wholly owned subsidiary of **Defendant Amazon.com, Inc.**, a Delaware corporation with its principal place of business in Seattle, Washington, at Amazon's LGB3 Distribution Center located at **4950 Goodman Way, Eastvale, California 91752**, from June 11, 2022 until his wrongful termination on March 5, 2025.

3. During his employment, Plaintiff was subject to pervasive disability-based harassment and bullying by coworkers and repeatedly sought intervention and protection from Human Resources personnel, including HR Manager Robert Garcia and HR Representative Briana Lopez. Instead of addressing the misconduct, Amazon escalated the harm by falsely disciplining Plaintiff for autism-related expressive conduct and ultimately terminating him under a pretext of "aggression."

4. Plaintiff's disabilities—Autism Spectrum Disorder and Generalized Anxiety Disorder—substantially limited major life activities, including social interaction, emotional regulation, and communication. He was known to the employer as a qualified individual with a disability under 42 U.S.C. § 12102(1) and Cal. Gov. Code § 12926.1(c), and was able to perform the essential functions of his job with or without reasonable accommodation.

5. Despite this, Defendant failed to engage in any meaningful interactive process (in violation of Cal. Gov. Code § 12940(n) and 42 U.S.C. § 12112(b)(5)(A)), failed to provide reasonable accommodations (Cal. Gov. Code § 12940(m)), and failed to protect Plaintiff from known workplace harassers in violation of FEHA and established common law duties of care.

6. Plaintiff's conduct on February 25, 2025—including speaking aloud to himself, tapping objects, and exhibiting visible frustration—was a direct manifestation of his disability, occurring during an uncharacteristic shift assignment in Amazon's Stow department. Although no threats were made and no property was damaged, Amazon suspended him that day and terminated him less than two weeks later for purported "Category 1 infractions," thereby violating *Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128 and

*Weaving v. City of Hillsboro* (9th Cir. 2014) 763 F.3d 1106, which prohibit termination based on disability-related conduct absent accommodation efforts.

7. Further compounding the harm, Amazon improperly challenged Plaintiff's claim for unemployment insurance benefits with the California Employment Development Department (EDD), falsely asserting misconduct that stigmatized Plaintiff in the labor market and deepened the psychological toll of the termination.

8. On March 13, 2025, Plaintiff received a Right to Sue notice from the California Civil Rights Department (CRD Matter No. 202503-28692225), triggering a one-year statute under Gov. Code § 12965(b). All conditions precedent to suit under FEHA have been satisfied.

9. Plaintiff now brings this action to seek full redress for violations of federal and state civil rights and labor laws, including but not limited to the ADA, FEHA, Labor Code § 98.6, and common law doctrines prohibiting wrongful discharge in violation of public policy, seeking compensatory damages, front and back pay, emotional distress damages, civil penalties, attorney's fees, and punitive damages as authorized by law.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to **28 U.S.C. § 1331**, as Plaintiff brings claims under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., a federal statute. This Court also has jurisdiction pursuant to **28 U.S.C. § 1343(a)(4)** for actions brought under Acts of Congress providing for the protection of civil rights.

11. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to **28 U.S.C. § 1367(a)**, because those claims are so related to Plaintiff's federal ADA claims that they form part of the same case or controversy under Article III of the United States Constitution.

12. Alternatively, this Court has diversity jurisdiction under **28 U.S.C. § 1332**, as the amount in controversy exceeds $75,000 exclusive of interest and costs, and there is complete diversity of citizenship. Plaintiff is a citizen and resident of the State of California. Defendant **Amazon.com, Inc.** is a corporation organized under the laws of the State of Delaware with its principal place of business in Seattle, Washington, and is thus a citizen of Delaware and

3

Washington for diversity purposes. The citizenship of fictitiously named defendants DOES 1 through 10 is disregarded for diversity purposes under **28 U.S.C. § 1441(b)(1)** until such time as their identities and states of citizenship are ascertained.

13. Venue is proper in the **United States District Court for the Central District of California, Eastern Division**, pursuant to **28 U.S.C. § 1391(b)(2)**, because a substantial part of the events or omissions giving rise to the claims occurred in **Riverside County**, State of California, including Plaintiff's employment, harassment, requests for accommodation, and unlawful termination at Amazon's LGB3 distribution center located at **4950 Goodman Way, Eastvale, California 91752**.

14. This Court is further authorized to grant declaratory and injunctive relief, damages, costs, and attorney's fees pursuant to the Americans with Disabilities Act (42 U.S.C. §§ 12117 and 12205), the California Fair Employment and Housing Act (Gov. Code § 12965(b)), California Labor Code § 98.6, and the common law of the State of California.

15. Plaintiff has exhausted all administrative prerequisites to suit under the California Fair Employment and Housing Act. Plaintiff filed a verified complaint of discrimination with the California Civil Rights Department (CRD) and received a Notice of Right to Sue dated March 13, 2025, which is attached hereto as Exhibit A. Plaintiff files this complaint within one year of that notice, in accordance with **Cal. Gov. Code § 12965(b)**.

16. Plaintiff also sues **DOES 1 through 10**, inclusive, who are currently unknown agents, employees, supervisors, managers, contractors, or alter egos of Defendant who committed or participated in the unlawful acts alleged herein. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Each defendant, including DOES 1 through 10, is responsible in some manner for the occurrences alleged herein, and Plaintiff's damages as alleged were proximately caused by their conduct.

## PARTIES

17. Plaintiff **JARED WHITE** ("Plaintiff") is, and at all relevant times herein was, an individual residing in the City of Norco, County of Riverside, State of California. Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act

4

("ADA"), 42 U.S.C. § 12102(1), and the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12926.1(c), in that he has been diagnosed with Autism Spectrum Disorder and Generalized Anxiety Disorder, both of which substantially limit major life activities, including emotional regulation, communication, and social functioning.

18. Plaintiff was employed by Defendants from approximately June 11, 2022 through March 5, 2025, and at all times during his employment, he performed his job duties in a satisfactory manner and was able to perform the essential functions of his job with or without reasonable accommodation, as defined by **42 U.S.C. § 12111(8)** and **Cal. Gov. Code § 12940(a)**.

19. Defendant **AMAZON.COM, INC.** ("Amazon") is now, and at all relevant times herein was, a corporation organized under the laws of the State of Delaware, with its principal place of business located in Seattle, Washington. Amazon is and was doing substantial business in the State of California, including in Riverside County, where Plaintiff was employed.

20. Defendant Amazon is an "employer" within the meaning of both the ADA and FEHA, as it employed well over 15 employees during the relevant time period. See **42 U.S.C. § 12111(5)(A)** (employer defined as having 15 or more employees), and **Cal. Gov. Code § 12926(d)** (employer defined as employing five or more persons). Amazon owns, operates, and/or manages a facility known as the LGB3 Distribution Center, located at 4950 Goodman Way, Eastvale, California 91752, where the events alleged in this Complaint occurred.

21. Defendant **Amazon.com Services LLC**, a wholly owned subsidiary or agent of Amazon.com, Inc., directly employed Plaintiff, maintained personnel files, enforced HR policy at the LGB3 facility, and acted as a co-employer and/or integrated enterprise with Amazon.com, Inc. Amazon and its subsidiaries exercised joint control over the employment relationship, including hiring, discipline, and termination decisions, and shared human resources functions and employment policies across entities, thereby rendering them liable under both a joint employer and single integrated enterprise theory. See *Swallows v. Barnes & Noble Book Stores, Inc.* (3d Cir. 1999) 128 F.3d 990; *Johnson v. Serenity Transp., Inc.* (9th Cir. 2017) 874 F.3d 733.

22. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named DOE defendants is in some manner responsible for, participated in, contributed to, or ratified the acts and omissions alleged in this Complaint. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

23. Plaintiff is informed and believes, and thereon alleges, that each Defendant, including DOES 1 through 10, was at all relevant times the agent, employee, alter ego, representative, joint venturer, partner, successor, or assign of every other Defendant, and was acting within the course and scope of said relationship. Each Defendant had actual or constructive knowledge of the conduct of the other Defendants and ratified, approved, or acquiesced in such conduct.

24. Unless otherwise specified, all references in this Complaint to "Defendant," "Defendants," or "Amazon" shall be deemed to refer collectively to all named and DOE defendants.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Background and Disability

25. Plaintiff Jared White is a 26-year-old individual residing in Norco, California, who was employed by Defendants as a full-time warehouse associate at Amazon's LGB3 Distribution Center located at 4950 Goodman Way, Eastvale, California 91752. Plaintiff began his employment on or about June 11, 2022, and was promoted to Blue Badge status in August 2022, signifying regular full-time employment status with benefits.

26. Plaintiff has been diagnosed with Autism Spectrum Disorder, Generalized Anxiety Disorder, and Epilepsy (Unspecified), as confirmed by his treating physician, Dr. John Daniel Koontz, MD, in correspondence dated December 17, 2024, and incorporated by reference herein. These conditions are serious, chronic neurodevelopmental and psychiatric conditions that substantially limit Plaintiff's ability to interact with others, regulate emotional responses, and process sensory input in high-stress environments.

27. Autism Spectrum Disorder is a disability under both the Americans with Disabilities Act, 42 U.S.C. § 12102(1)-(2), and the California Fair Employment and Housing Act, Cal. Gov. Code

6

§ 12926.1(c), because it significantly impacts major life activities including cognitive functioning, communication, and social interaction. Generalized Anxiety Disorder likewise qualifies as a mental disability under both statutes. Plaintiff's epilepsy diagnosis, while not the primary basis for claims herein, further qualifies as a physical disability under FEHA and the ADA.

28. Throughout his employment, Plaintiff performed his job duties competently and consistently received favorable recognition from coworkers and supervisors, including shout-outs, raffle rewards, and voluntary overtime assignments. Plaintiff took pride in his role, particularly his leadership as a "Go Cart PG" (pallet guide), a position requiring organizational efficiency and peer coordination.

29. Despite his disabilities, Plaintiff was capable of performing the essential functions of his position with or without reasonable accommodation. At various times, Plaintiff requested intervention from Amazon's Human Resources department and site supervisors to address conflicts, reduce workplace hostility, and obtain support—requests that were denied or ignored in violation of Defendants' statutory duties.

30. Plaintiff disclosed his conditions to Defendants orally, in writing, and through direct HR interviews as early as November 8, 2024, including through internal written statements, appeals, and escalation to senior HR managers such as Robert Garcia and Briana Lopez. Amazon was thus on actual and constructive notice of Plaintiff's need for workplace accommodation and protection under 42 U.S.C. § 12112(b)(5)(A) and Gov. Code §§ 12940(m), (n).

31. Despite this, Defendants failed to take appropriate action to engage in the interactive process, identify reasonable accommodations, or protect Plaintiff from a hostile and retaliatory work environment that ultimately resulted in his wrongful termination.

**B. Harassment and HR Misconduct**

32. Beginning in or around late 2023 and continuing through Plaintiff's termination in March 2025, Plaintiff was subjected to an escalating campaign of harassment, intimidation, and ridicule by a group of coworkers at the LGB3 Distribution Center, including but not limited to

7

Eric Divaldo, Joseph Benitez, Vanessa Ibarra, and Corina [last name unknown]. The hostile behavior was open, sustained, and targeted specific features of Plaintiff's disability—including his tendency to speak aloud to himself, his heightened sensitivity to social rejection, and his neurodivergent leadership style as a "Go Cart PG."

33. Harassing conduct included:

- Mockery and taunts about Plaintiff's speech, behavior, and role assignments;

- Refusal to follow Plaintiff's direction as Go Cart PG and undermining his leadership;

- False complaints and fabricated allegations to HR regarding "micromanagement" or "inappropriate" conduct;

- Threats of social sabotage, including one coworker warning Plaintiff: "Keep my name out of your mouth or I'll spread rumors about you fantasizing about a manager's private parts."

34. The conduct was so pervasive and demeaning that it materially altered the conditions of Plaintiff's employment and created a hostile working environment in violation of Cal. Gov. Code § 12940(j) and 29 C.F.R. § 1604.11(a). See also *Hope v. California Youth Authority* (2005) 134 Cal.App.4th 577.

35. Plaintiff reported the bullying and harassment to Amazon's Human Resources department on multiple occasions, including:

- November 8, 2024, when he was turned away by HR personnel who told him that "being rude is not a violation of Amazon policy";

- November 14, 2024, when he again attempted to escalate concerns and was referred to HR Manager Robert Garcia;

- December 11, 2024, after a coworker threatened physical violence in defense of Plaintiff;

- Ongoing follow-ups with HR personnel including Briana Lopez, Matthew [last name unknown], and senior operational staff.

36. Instead of investigating or remedying the conduct, Amazon retaliated against Plaintiff by issuing a final written warning for allegedly inappropriate "jokes and skits," which Plaintiff had shared in private as humorous parodies of warehouse events. Notably, these skits had

8

COMPLAINT

previously been praised by supervisors and were never the subject of formal complaint until after Plaintiff began reporting harassment.

37. Plaintiff explicitly asked HR Manager Robert Garcia to refrain from focusing on the skits and to address the bullying instead. Nevertheless, Amazon weaponized the skits as a pretext to discipline Plaintiff while taking no formal corrective action against his harassers, even after multiple reports of extended unauthorized breaks, drinking on the job, and verbal abuse by individuals including Eric and Joseph.

38. The decision to discipline Plaintiff while excusing more egregious behavior by his coworkers constitutes selective enforcement and discriminatory treatment based on disability in violation of 42 U.S.C. § 12112(b)(1) and Cal. Gov. Code § 12940(a), (h), and (k).

39. HR's failure to investigate the misconduct, refusal to implement any safeguards or protective measures, and conscious decision to use disability-related behavior as grounds for punitive action, reflect a systemic violation of Amazon's duty to take "all reasonable steps to prevent harassment from occurring" under Cal. Gov. Code § 12940(k). See *Northrop Grumman Corp v. Workers' Comp. Appeals Bd.* (2002) 103 Cal.App.4th 1021.

40. Amazon's internal appeal system proved equally compromised. Although Plaintiff attempted to utilize Amazon's "A to Z" internal portal and was told he was eligible for appeal, his right to appeal the final warning was denied by HR under the false pretense of ineligibility. This pretextual denial of appeal further demonstrates Amazon's failure to maintain a fair and unbiased mechanism for investigating disability-based complaints and ensuring procedural protections.

41. After exhausting internal options, Plaintiff escalated his concerns externally and communicated with Amazon's Global Ethics & Compliance Office by emailing jeff@amazon.com and corresponding with a representative named Taylor, identified as a Senior Investigations Escalator. Despite this escalation, Amazon upheld the discipline and failed to intervene, rendering the corporate grievance process effectively futile.

42. The harassment, indifference, and retaliation culminated in Plaintiff's isolation, anxiety, emotional distress, and loss of workplace protections. Amazon's failure to take corrective

action—and its punitive response to Plaintiff's complaints—demonstrates deliberate indifference and satisfies the standard for punitive damages under both Gov. Code § 12965(c) and Kolstad v. American Dental Ass'n (1999) 527 U.S. 526.

**C. Failure to Accommodate and Engage in the Interactive Process**

43. Plaintiff's disabilities—including Autism Spectrum Disorder, Generalized Anxiety Disorder, and Unspecified Epilepsy—were known to Amazon throughout the course of his employment. Plaintiff verbally disclosed his conditions to multiple supervisors and Human Resources representatives, and submitted detailed written complaints, internal witness statements, and messages describing the need for intervention and support.

44. In addition, on December 17, 2024, Plaintiff's treating physician, Dr. John Daniel Koontz, MD, confirmed Jared White's diagnoses in medical correspondence that Plaintiff offered to provide for workplace purposes. These medical records, which include formal diagnoses of Autism Spectrum Disorder and Anxiety, triggered Amazon's statutory obligations to engage in a timely, good-faith interactive process and to evaluate and implement appropriate reasonable accommodations. See 42 U.S.C. § 12112(b)(5)(A) and Cal. Gov. Code §§ 12940(m)-(n).

45. Plaintiff repeatedly requested accommodations in the form of:

- Reassignment to consistent work teams or buffers;
- Separation from harassing or antagonistic coworkers;
- Protective oversight from HR or operational leads;
- De-escalation support or quiet time in response to sensory overload;
- Reinstatement to roles where he felt comfortable and supported (e.g., Go Cart PG);
- Transfer out of "Stow" department, where his disability-related symptoms were exacerbated.

46. Despite being on actual notice of Plaintiff's medical impairments and functional limitations, Defendants failed to initiate or participate in the interactive process in any meaningful way. Amazon did not conduct a medical accommodation assessment, did not request clarification or supporting documentation, and did not document or offer a single individualized accommodation plan. This omission violates:

10

- 42 U.S.C. § 12112(b)(5)(A) (failure to reasonably accommodate),
- 29 C.F.R. § 1630.2(o)(3) (interactive process requirement under ADA),
- Cal. Gov. Code § 12940(n) (requirement to engage in good faith),
- *Barnett v. U.S. Air, Inc.* (2000) 228 F.3d 1105 (en banc),
- *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34.

47. Amazon's internal policy structure and HR hierarchy further obstructed the interactive process. When Plaintiff sought accommodations through HR Manager Robert Garcia, he was met with skepticism and was instead reprimanded for allegedly "joking" or submitting "skits." This reflects a systemic misunderstanding of how neurodivergent communication and coping mechanisms manifest in the workplace.

48. On February 25, 2025, Plaintiff was assigned to Amazon's "Stow" department under conditions that predictably triggered sensory and emotional overload: malfunctioning equipment, unusually large inventory, and altered shift rhythms. He experienced autism-related behavioral responses including speaking to himself, expressing frustration verbally, and physically engaging with objects (e.g., kicking totes, tapping his station with a box cutter), which did not involve violence or threats and were not directed at any person.

49. Rather than interpreting this conduct through a disability-aware lens, Amazon suspended Plaintiff the same day under pretextual "Category 1 infractions," and made no effort to debrief the incident as a disability-related episode subject to accommodation and reintegration. The following week, Plaintiff sought clarification and discussed seeking a doctor's note to request reassignment. Amazon ignored this outreach and instead terminated him on March 5, 2025, citing the same behavioral manifestations of his autism and anxiety.

50. This disciplinary termination without engaging in the interactive process violated both the ADA and FEHA. See:

- *Humphrey v. Memorial Hospitals Ass'n* (9th Cir. 2001) 239 F.3d 1128 (symptoms of disability cannot be treated as misconduct),
- *Weaving v. City of Hillsboro* (9th Cir. 2014) 763 F.3d 1106 (termination based on disability behavior without accommodation attempt violates ADA),

11

- *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 379–80.

51. Amazon's pattern of denying or ignoring accommodation requests, its failure to conduct a formal disability assessment, and its punitive handling of Plaintiff's disability symptoms reflect bad faith and support a finding of reckless disregard for Plaintiff's federally and state-protected rights. Plaintiff is therefore entitled to compensatory, equitable, and punitive damages under Gov. Code § 12965(c) and 42 U.S.C. § 1981a(b)(1).

**D. Pretextual Termination and Retaliation**

52. On or about February 25, 2025, while working a voluntarily accepted shift in Amazon's "Stow" department—a high-pressure environment unfamiliar to Plaintiff—he experienced significant stress and sensory overload. As a result of his autism spectrum condition and co-occurring anxiety, Plaintiff displayed visible emotional distress: talking aloud to himself, tapping his workstation with a box cutter (without causing damage or threatening others), and expressing frustration physically by pushing and kicking totes.

53. These actions were non-violent, non-directed, and wholly symptomatic of Plaintiff's neurodevelopmental disability, as recognized by the ADA and FEHA. See *Humphrey v. Memorial Hosp. Ass'n* (9th Cir. 2001) 239 F.3d 1128; *Weaving v. City of Hillsboro* (9th Cir. 2014) 763 F.3d 1106.

54. Rather than addressing the matter as a disability-related incident requiring de-escalation and potential accommodation, Amazon managers, including Loss Prevention (LP) and HR Representative Briana Lopez, treated the episode as a disciplinary matter. Plaintiff was immediately suspended pending investigation, despite having informed multiple managers of the environmental stressors and having self-regulated and completed his shift without incident or confrontation.

55. Plaintiff was notified of his termination on March 5, 2025, during a phone call from HR, citing "Category 1 infractions" and alleged aggression—terms never defined in any objective or behaviorally specific manner. Amazon also alleged that Plaintiff made a statement that "he would do something if someone crossed his path," which was a mischaracterization taken out of context during a stressed interview setting.

12

56. The justification offered for Plaintiff's termination was pretextual, and the adverse employment action was in retaliation for:

- Repeated protected complaints of disability harassment (Cal. Gov. Code § 12940(h));
- Attempts to request accommodations (42 U.S.C. § 12203; Cal. Gov. Code § 12940(m)-(n));
- Escalating complaints to senior HR, including external contact to Amazon's Ethics Office;
- Internal written submissions detailing misconduct and his own medical condition.

57. The close temporal proximity between Plaintiff's disability complaints (November 2024 – February 2025) and his suspension and termination (February 25 to March 5, 2025), combined with the lack of documented performance deficiencies and the absence of corrective efforts or accommodation offers, support a strong inference of retaliatory motive. See:

- *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028 (retaliation under FEHA does not require formal opposition; internal reporting suffices),
- *Burlington N. & Santa Fe Ry. Co. v. White* (2006) 548 U.S. 53, 68 (retaliation includes any materially adverse action likely to dissuade a reasonable worker from engaging in protected activity).

58. Following his termination, Amazon further retaliated against Plaintiff by contesting his application for unemployment insurance benefits with California's Employment Development Department (EDD), asserting false claims of "aggression" and misconduct. This constituted a post-employment act of retaliation, chilling Plaintiff's access to state benefits and compounding his emotional and financial harm. See *McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283 (post-employment retaliation actionable under FEHA); *Steele v. Youthful Offender Parole Bd.* (2008) 162 Cal.App.4th 1241.

59. Amazon's retaliatory conduct and pretextual termination deprived Plaintiff of income, benefits, emotional stability, and his right to workplace equality under both state and federal law. Defendants' conduct constitutes willful and malicious disregard of protected rights, entitling Plaintiff to both compensatory and punitive damages pursuant to 42 U.S.C. § 1981a(b)(1) and Gov. Code § 12965(c).

13

**FIRST CAUSE OF ACTION**

**Disability Discrimination in Violation of the California Fair Employment and Housing Act**

**(Gov. Code § 12940(a)) and the Americans with Disabilities Act (42 U.S.C. § 12112(a))**

(Against All Defendants)

60. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 59, inclusive, as though fully set forth herein.

61. At all relevant times, Defendants were "employers" within the meaning of:

- Gov. Code § 12926(d) (employing five or more persons); and

- 42 U.S.C. § 12111(5)(A) (employing 15 or more persons).

62. Plaintiff Jared White is a qualified individual with a disability within the meaning of:

- Gov. Code § 12926.1(c) (California FEHA); and

- 42 U.S.C. § 12102(1) (ADA), in that he has documented diagnoses of Autism Spectrum Disorder, Generalized Anxiety Disorder, and Epilepsy, all of which substantially limit one or more major life activities, including communication, social interaction, emotional regulation, and neurological processing.

63. Plaintiff was qualified to perform the essential functions of his position, with or without reasonable accommodation, as required by:

- Gov. Code § 12940(a); and

- 42 U.S.C. § 12111(8).

64. Defendants were at all times aware of Plaintiff's disabilities. Plaintiff verbally disclosed his autism and anxiety to HR personnel, including Robert Garcia, Briana Lopez, and Matthew [last name unknown], and repeatedly submitted written complaints and internal witness statements documenting the functional impact of his conditions. In addition, Plaintiff attempted to secure confirmation from his treating physician, Dr. John Daniel Koontz, regarding his autism diagnosis for workplace purposes.

65. Defendants subjected Plaintiff to adverse employment actions on account of his disabilities, including:

- Harassment and bullying by coworkers that targeted Plaintiff's autism-related traits;

14

- Disciplinary write-ups and a final written warning based on Plaintiff's expressive behavior (i.e., sharing skits and speaking aloud);
- Denial of accommodation requests and failure to implement protective measures;
- Suspension and ultimate termination on March 5, 2025, following a disability-related expression of distress during a stressful shift;
- Post-termination retaliation through false statements to the California EDD regarding Plaintiff's behavior.

66. Under FEHA and the ADA, a plaintiff need only show that disability was a substantial motivating reason (under FEHA) or a motivating factor (under the ADA) for the adverse employment action. See:

- *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232;
- *Head v. Glacier Nw., Inc.* (9th Cir. 2005) 413 F.3d 1053;
- *Brundage v. Hahn* (1997) 57 Cal.App.4th 228.

67. The proximate cause of Plaintiff's termination was a series of conduct episodes directly connected to Plaintiff's protected disabilities, including:

- Speaking to himself and expressing frustration during a high-stress Stow shift on February 25, 2025;
- Kicking and pushing totes in a non-violent, self-regulatory manner consistent with his autism symptoms;
- Expressing emotional distress in a manner misinterpreted by Amazon as aggression.

68. Defendants treated Plaintiff less favorably than similarly situated employees without disabilities. Other associates who committed more serious workplace violations—such as taking extended breaks, drinking on the job, or refusing assignments—were not disciplined or terminated. In contrast, Plaintiff's non-violent, disability-related conduct was mischaracterized as aggression and used as pretext for termination.

69. Plaintiff's termination constitutes unlawful discrimination based on disability in violation of:

- Gov. Code § 12940(a) (California FEHA); and

15

- 42 U.S.C. § 12112(a) (ADA), which prohibits discharging or otherwise discriminating against a qualified individual "on the basis of disability."

70. Defendants' conduct was knowing, intentional, malicious, and carried out in willful disregard of Plaintiff's rights, justifying an award of punitive damages under:

- Gov. Code § 12965(c) (FEHA); and
- 42 U.S.C. § 1981a(b)(1) (ADA).

71. As a direct and proximate result of Defendants' discriminatory acts, Plaintiff has suffered and continues to suffer:

- Loss of wages and employment benefits;
- Mental and emotional distress, including anxiety, shame, humiliation, and trauma;
- Harm to reputation and professional standing;
- Out-of-pocket medical and psychological treatment costs.

72. Plaintiff is therefore entitled to:

- Back pay and front pay;
- General and special damages;
- Emotional distress damages under *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686;
- Punitive damages;
- Attorneys' fees and costs under Gov. Code § 12965(b) and 42 U.S.C. § 12205.

## SECOND CAUSE OF ACTION

**Failure to Provide Reasonable Accommodation in Violation of Gov. Code § 12940(m) and 42 U.S.C. § 12112(b)(5)(A)**

(Against All Defendants)

73. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 72 as though fully set forth herein.

74. At all relevant times, Defendants were subject to the reasonable accommodation mandates under:

- California Government Code § 12940(m) (FEHA); and

16

COMPLAINT

- 42 U.S.C. § 12112(b)(5)(A) (ADA), which prohibit an employer from failing to make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability, unless doing so would impose an undue hardship.

75. Plaintiff is a qualified individual with a disability, as defined under:

- Gov. Code § 12926.1(c) and 42 U.S.C. § 12102(1);
- Plaintiff's disabilities include Autism Spectrum Disorder, Generalized Anxiety Disorder, and Epilepsy, as confirmed by his treating physician Dr. John Daniel Koontz, MD, and consistently communicated to Defendants throughout the relevant time period.

76. Plaintiff was able to perform the essential functions of his position with or without reasonable accommodation, as defined by:

- Gov. Code § 12926(f) and 42 U.S.C. § 12111(8);
- Plaintiff successfully worked as a warehouse associate and "Go Cart PG" for nearly three years, receiving commendations and positive peer feedback.

77. Defendants had actual and constructive knowledge of Plaintiff's need for accommodation, based on:

- Verbal disclosures and repeated written communications with HR beginning in November 2024;
- Submissions of internal witness statements describing autism-related behavior;
- Reports of harassment and sensory distress triggered by specific coworkers and job assignments;
- Escalations to senior HR officials and Amazon's Global Ethics Office.

78. Plaintiff made multiple specific requests for reasonable accommodations, including:

- Assignment to consistent and non-hostile work teams;
- Reassignment away from known aggressors;
- De-escalation support for autism-related overstimulation;
- Transfer out of the "Stow" department, a high-feedback area incompatible with his cognitive profile;
- Coaching or oversight to reduce exposure to sensory and interpersonal stressors.

17

79. Defendants failed to engage in any good-faith efforts to accommodate Plaintiff's known
disabilities. At no point did Amazon:

- Conduct a disability assessment;

- Offer, explore, or document any reasonable accommodations;

- Provide medical forms, ADA paperwork, or initiate an interactive process;

- Provide even temporary or transitional support despite multiple documented incidents.

80. Instead, Defendants punished Plaintiff for conduct that was plainly caused by his
disabilities—including talking to himself, tapping workstations, and expressing frustration
under pressure—by:

- Disciplining him for expressive behavior (e.g., "jokes and skits");

- Failing to intervene in bullying despite Plaintiff's known social vulnerability;

- Terminating him on March 5, 2025, based on his autism-related behavior during a stressful
shift in "Stow."

81. The above conduct constitutes a per se violation of:

- Gov. Code § 12940(m) (refusal to accommodate known disability); and

- 42 U.S.C. § 12112(b)(5)(A) (failure to accommodate as unlawful discrimination under the
ADA).

82. Defendants' failure to engage in any accommodation process—despite multiple triggers—
also reflects bad faith, and justifies an award of punitive damages under:

- *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34;

- *Dark v. Curry County* (9th Cir. 2006) 451 F.3d 1078;

- Gov. Code § 12965(c) and 42 U.S.C. § 1981a(b)(1).

83. As a direct and proximate result of Defendants' unlawful failure to provide reasonable
accommodation, Plaintiff has sustained and continues to suffer:

- Loss of income and benefits;

- Emotional pain and mental suffering;

- Reputational harm and disruption of care and treatment.

84. Plaintiff seeks all legal and equitable relief available under FEHA and the ADA, including:

18

COMPLAINT

- Compensatory and general damages;
- Punitive damages;
- Injunctive relief;
- Attorneys' fees and costs pursuant to Gov. Code § 12965(b) and 42 U.S.C. § 12205.

### THIRD CAUSE OF ACTION

**Failure to Engage in the Interactive Process in Violation of Gov. Code § 12940(n) and 42 U.S.C.
§ 12112(b)(5)(A)**

(Against All Defendants)

85. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 84 as though fully set forth herein.

86. Under both California and federal law, an employer who becomes aware of an employee's disability has an affirmative duty to engage in a timely, good-faith interactive process with the employee to determine whether a reasonable accommodation can be made. See:

- Gov. Code § 12940(n) (California FEHA); and
- 29 C.F.R. § 1630.2(o)(3) (implementing ADA).

87. Plaintiff is a qualified individual with a disability as defined under Gov. Code § 12926.1(c) and 42 U.S.C. § 12102(1). His disabilities include Autism Spectrum Disorder, Generalized Anxiety Disorder, and Epilepsy, all of which substantially limit one or more major life activities, including communication, self-regulation, emotional response, and social interaction.

88. Defendants were on notice of Plaintiff's disabilities and need for accommodation no later than November 8, 2024, when Plaintiff first reported his bullying and distress to HR. Defendants thereafter received continuing and escalating disclosures, including:

- Oral complaints to supervisors and HR personnel;
- Written witness statement forms describing harassment and emotional distress;
- Efforts to appeal a disciplinary warning linked to disability-related expressive conduct;
- An attempted escalation to Amazon's ethics hotline and global investigations office;
- Ongoing behavioral indicators directly tied to Plaintiff's known diagnoses.

19

89. Plaintiff made repeated efforts to initiate a dialogue regarding accommodations or support, including specific requests to:

- Be assigned to stable, supportive work teams;
- Avoid contact with known aggressors;
- Be reassigned from the "Stow" department;
- Be allowed to perform duties in a manner consistent with his neurocognitive needs;
- Explore a possible medical note and reassignment after experiencing sensory overload.

90. Despite these clear and repeated efforts, Defendants failed to initiate or participate in any interactive process, in violation of Gov. Code § 12940(n) and 42 U.S.C. § 12112(b)(5)(A). There is no record of any:

- Interactive meeting;
- Disability accommodation paperwork;
- Internal ADA compliance protocol;
- Attempt to consult with Plaintiff's physician;
- Exploration of workplace modifications.

91. Amazon's Human Resources staff—including Robert Garcia and Briana Lopez—ignored these duties and instead treated Plaintiff's disability-related behaviors as misconduct. They issued Plaintiff a final written warning without examining disability as a contributing factor, and ultimately terminated Plaintiff on March 5, 2025, without ever initiating a formal or informal interactive process.

92. This abdication of duty violated:

- *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34 (interactive process required once employer becomes aware of disability);
- *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359 (failure to explore even obvious accommodations is actionable);
- *Barnett v. U.S. Air, Inc.* (2002) 535 U.S. 391 (interactive process integral to ADA compliance).

20

93. Defendants' failure to engage in the interactive process was not an isolated oversight, but part of a broader pattern of indifference to Plaintiff's legal rights and emotional well-being. The breakdown in communication and refusal to collaborate with Plaintiff constitutes a willful and reckless violation of both FEHA and the ADA.

94. As a direct and proximate result of Defendants' failure to engage in the interactive process, Plaintiff has suffered and continues to suffer:

- Lost earnings and employment benefits;

- Emotional distress, anxiety, and humiliation;

- Exacerbation of existing mental health conditions;

- Out-of-pocket medical and psychological costs.

95. Plaintiff therefore seeks:

- Economic damages including back pay and front pay;

- Emotional distress and general damages;

- Punitive damages under Gov. Code § 12965(c) and 42 U.S.C. § 1981a(b)(1);

- Attorney's fees and costs pursuant to Gov. Code § 12965(b) and 42 U.S.C. § 12205;

- Declaratory and injunctive relief as appropriate.

**FOURTH CAUSE OF ACTION**

**Retaliation in Violation of Gov. Code § 12940(h) and Labor Code § 98.6**

(Against All Defendants)

96. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 95 as though fully set forth herein.

97. California Government Code § 12940(h) makes it unlawful for an employer to retaliate against an employee for opposing any practices forbidden under the Fair Employment and Housing Act or for filing a complaint, testifying, or assisting in any proceeding under the Act.

98. California Labor Code § 98.6(a) similarly prohibits an employer from retaliating against any employee because the employee filed a complaint, disclosed information, or participated in proceedings related to rights under the Labor Code or other laws, including FEHA.

99. Plaintiff engaged in multiple acts of statutorily protected activity, including:

- Reporting workplace harassment based on disability, beginning on or about November 8, 2024;

- Submitting multiple written complaints and witness statements describing coworker misconduct and emotional distress;

- Escalating disability-related concerns to HR Manager Robert Garcia, HR Representative Briana Lopez, and a representative from Amazon's Global Ethics Office;

- Requesting reasonable accommodations and intervention in the face of ongoing bullying and retaliation;

- Attempting to appeal a disciplinary warning that was based on conduct linked to his autism diagnosis.

100.     Plaintiff's disclosures and complaints placed Defendants on actual and constructive notice that he was opposing discriminatory and harassing conduct, and attempting to assert his rights under FEHA and related labor laws. These actions were protected whether or not they ultimately succeeded or were formally processed. See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1043 (internal complaints suffice to trigger retaliation protections).

101.     In direct response to Plaintiff's protected activity, Defendants undertook a series of adverse employment actions, including:

- A final written warning issued shortly after Plaintiff's report of disability-based bullying and verbal abuse;

- Continued failure to provide accommodations or engage in the interactive process;

- Suspension on February 25, 2025, following a known disability-related behavioral episode;

- Termination on March 5, 2025, under pretextual grounds of "aggression" stemming from Plaintiff's autism and anxiety-related conduct;

- Post-termination retaliation, including false claims made to the California Employment Development Department (EDD) contesting Plaintiff's unemployment insurance eligibility.

102.     The temporal proximity between Plaintiff's reports and his termination—less than four months between his initial formal report and the firing—gives rise to a strong inference

22

COMPLAINT

of retaliatory motive. See *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 478 (retaliation inferred from timing and shifting justifications).

103.    Defendants' actions were substantially motivated by retaliatory animus, and not by any legitimate, non-discriminatory reason. Plaintiff's job performance was consistently satisfactory, and his behavior on February 25, 2025, was symptomatic of his disability and non-threatening.

104.    By retaliating against Plaintiff for asserting his rights, Defendants violated:

- Gov. Code § 12940(h) (FEHA retaliation); and
- Labor Code § 98.6(a) (retaliation for asserting legal rights in the workplace).

105.    As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered and continues to suffer:

- Loss of wages, employment benefits, and future earning capacity;
- Emotional distress, humiliation, and psychological harm;
- Reputational damage and loss of professional relationships;
- Medical and therapy expenses tied to the retaliation and job loss.

106.    Plaintiff is entitled to all remedies allowed by law, including but not limited to:

- Back pay, front pay, and compensatory damages;
- Emotional distress and general damages;
- Civil penalties under Labor Code § 98.6(b)(3);
- Attorneys' fees and costs pursuant to Gov. Code § 12965(b) and Labor Code § 218.5;
- Punitive damages under Gov. Code § 12965(c) due to Defendants' willful and malicious conduct.

**FIFTH CAUSE OF ACTION**

**Harassment Based on Disability in Violation of Gov. Code § 12940(j)(1)**

(Against All Defendants)

107.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 106 as though fully set forth herein.

23

108.  California Government Code § 12940(j)(1) makes it unlawful for an employer, or any person acting as an agent or supervisor, to harass an employee because of their physical or mental disability, and further imposes direct liability on employers who fail to take immediate and appropriate corrective action when made aware of such harassment.

109.  Plaintiff Jared White is a qualified individual with a mental and developmental disability within the meaning of Gov. Code § 12926(j) and (m), having been diagnosed with Autism Spectrum Disorder and Generalized Anxiety Disorder, which substantially impair his ability to socially interact, communicate, and emotionally regulate in high-stimulus environments.

110.  Beginning in or around late 2023 and continuing through his termination in March 2025, Plaintiff was subjected to ongoing, targeted, and humiliating harassment at Amazon's LGB3 Distribution Center, located in Eastvale, California. The harassers included co-workers Eric Divaldo, Joseph Benitez, Vanessa Ibarra, and Corina [last name unknown].

111.  The harassment included, but was not limited to:

- Verbal mockery and ridicule of Plaintiff's disability-related speech and behavior;
- Spreading false rumors, including a threat to fabricate sexualized rumors to damage Plaintiff's reputation;
- Teasing and invalidation of Plaintiff's leadership role as "Go Cart PG";
- Undermining and sabotaging Plaintiff's efforts to direct work assignments;
- Coordinated exclusion and favoritism in shift roles;
- False and malicious reporting to supervisors and HR to provoke disciplinary action.

112.  The conduct was objectively offensive, severe and pervasive, and altered the conditions of Plaintiff's employment, creating an abusive working environment in violation of Gov. Code § 12940(j). See *Hope v. California Youth Authority* (2005) 134 Cal.App.4th 577; *Lyle v. Warner Bros. Television Prods.* (2006) 38 Cal.4th 264.

113.  Plaintiff reported the harassment repeatedly to Human Resources, including:

- November 8, 2024, complaint to HR regarding Eric Divaldo's threats and conduct;
- November 14, 2024, follow-up complaint referred to HR Manager Robert Garcia;

24

- December 11, 2024, complaint to HR about targeted exclusion and favoritism;

- Subsequent escalations to HR Rep Briana Lopez, HR Rep Matthew, and to Amazon's Global Ethics & Investigations Office via email.

114.    Defendants failed to take prompt, effective remedial action in response to these reports. Instead, Defendants:

- Discounted Plaintiff's concerns as insignificant or "not a violation of policy";

- Retaliated against Plaintiff with a final written warning based on his expressive behavior;

- Failed to separate Plaintiff from his harassers or monitor the work environment;

- Took no steps to discipline or reassign the offending employees.

115.    Under Gov. Code § 12940(j)(3), an employer is liable for harassment by co-workers if it knew or should have known of the conduct and failed to take immediate and appropriate corrective action. Defendants had actual knowledge of the conduct through direct written and oral complaints and ratified the harassers' behavior by refusing to intervene and instead disciplining Plaintiff.

116.    Moreover, several of the individuals involved in the harassment—Eric Divaldo and Joseph Benitez—were informal leaders or designated PGs with supervisory authority over certain tasks. Their actions were undertaken within the scope of their apparent authority, rendering Defendants strictly liable under Gov. Code § 12940(j)(1).

117.    The harassment caused Plaintiff severe emotional distress, social isolation, humiliation, and loss of workplace enjoyment. It also exacerbated Plaintiff's pre-existing mental health conditions and directly contributed to the adverse actions ultimately taken against him, including his termination.

118.    As a direct and proximate result of Defendants' conduct, Plaintiff has sustained:

- Economic damages, including lost wages and benefits;

- Emotional and psychological trauma;

- Harm to professional reputation and social functioning;

- Medical and therapeutic expenses.

119.    Defendants' conduct was malicious, oppressive, and carried out with conscious
disregard for Plaintiff's statutory rights, entitling Plaintiff to punitive damages under Gov.
Code § 12965(c).

120.    Plaintiff also seeks attorneys' fees and costs pursuant to Gov. Code § 12965(b) and all
other relief as deemed just and proper by this Court.

## SIXTH CAUSE OF ACTION

**Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of Gov. Code §
12940(k)**

(Against All Defendants)

121.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 120 as though
fully set forth herein.

122.    California Government Code § 12940(k) makes it unlawful for an employer to "fail to
take all reasonable steps necessary to prevent discrimination and harassment from occurring."
This duty includes not only adopting appropriate anti-discrimination policies, but promptly
and effectively responding to complaints and known conduct violating the California Fair
Employment and Housing Act (FEHA).

123.    At all relevant times, Defendants Amazon.com, Inc. and its agents and employees had
a nondelegable statutory duty to maintain a workplace free from unlawful discrimination,
harassment, and retaliation based on protected disabilities, including Plaintiff's Autism
Spectrum Disorder and Generalized Anxiety Disorder, as defined under Gov. Code §§
12926(j), (m).

124.    Plaintiff made repeated internal complaints of disability-based harassment, exclusion,
retaliation, and emotional harm starting in November 2024 and continuing through his
termination in March 2025. These complaints were made both verbally and in writing to HR
personnel, including:

- Robert Garcia (HR Manager),
- Briana Lopez (HR Rep),
- Matthew [last name unknown], and

26

COMPLAINT

- Amazon's Global Ethics & Compliance team via email.

125.    Defendants were on actual and constructive notice of:

- Persistent workplace bullying and mockery by coworkers including Eric Divaldo, Joseph Benitez, and Vanessa Ibarra;

- Disability-related expressions of distress by Plaintiff during difficult assignments;

- The adverse impact of job reassignments and unsafe work teams on Plaintiff's well-being;

- The lack of support, oversight, and intervention by HR or operations management.

126.    Despite this notice, Defendants failed to take reasonable steps to prevent or remedy:

- Discriminatory and harassing conduct by co-workers;

- The escalation of retaliation following Plaintiff's complaints;

- A hostile work environment based on Plaintiff's disabilities;

- The breakdown of accommodation and interactive process mechanisms.

127.    Reasonable preventative measures would have included:

- Timely investigation of Plaintiff's complaints;

- Reassignment or coaching of aggressor employees;

- Accommodation-related assessments or referrals to Amazon's Disability & Leave Services (DLS);

- Clarifying policies on neurodivergent behavior and inclusive workplace communication;

- Anti-harassment training specific to disability inclusion.

128.    Instead, Defendants retaliated against Plaintiff by:

- Issuing a final written warning based on expressive conduct symptomatic of his autism;

- Suspending him following a shift where he exhibited signs of sensory overload;

- Terminating him on March 5, 2025, without prior accommodations, a meaningful investigation, or interactive engagement.

129.    Defendants' failure to take any effective preventative or corrective action, while choosing instead to discipline and remove the complainant, constitutes a violation of Gov. Code § 12940(k). See *Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.* (2002) 103

Cal.App.4th 1021, 1035 (failure to prevent claim survives where employer takes no steps despite internal complaint).

130.    As a direct and proximate result of Defendants' failure to prevent discrimination, harassment, and retaliation, Plaintiff suffered:

- Loss of earnings and job security;
- Severe emotional and psychological harm;
- Aggravation of existing disabilities;
- Reputational harm and reduced future employability.

131.    Defendants' failure to uphold their legal obligations under FEHA was intentional, malicious, and carried out with conscious disregard for Plaintiff's civil rights, entitling Plaintiff to punitive damages under Gov. Code § 12965(c).

132.    Plaintiff further seeks attorneys' fees and costs under Gov. Code § 12965(b), and any and all other relief as may be just and proper.

**SEVENTH CAUSE OF ACTION**

**Wrongful Termination in Violation of Public Policy (Common Law Tameny Claim)**

(Against All Defendants)

133.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 132 as though fully set forth herein.

134.    Under California common law, it is unlawful for an employer to terminate an employee in violation of fundamental public policies expressed in statutory or constitutional provisions. See *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170.

135.    Plaintiff's termination on or about March 5, 2025, was substantially motivated by his:

- Disability status (Autism Spectrum Disorder and Anxiety Disorder);
- Reports of disability-based harassment and retaliation;
- Requests for accommodation and protection under the Fair Employment and Housing Act (FEHA) and Americans with Disabilities Act (ADA);
- Refusals to tolerate workplace misconduct and his escalations to Amazon's internal ethics and HR systems.

28

136.     The public policies implicated by Plaintiff's termination include, but are not limited to:

- The right to be free from disability discrimination in employment, as codified in:
    - o   FEHA (Gov. Code § 12940 et seq.);
    - o   ADA (42 U.S.C. § 12101 et seq.);
- The right to request and receive reasonable accommodations for a disability;
- The right to oppose and report unlawful harassment or discrimination;
- The constitutional right to be treated equally regardless of disability, as guaranteed under California Constitution, Article I, § 8;
- The public policy against retaliation for asserting legally protected rights in the workplace, per Labor Code § 98.6 and case law such as *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083 (overruled on other grounds).

137.     Plaintiff was at all times performing his job competently and had never been the subject of documented misconduct or violent behavior. The basis for his termination—characterizing his autism-related conduct as "aggression"—was pretextual and rooted in discriminatory bias and reprisal for protected complaints.

138.     Amazon's failure to accommodate Plaintiff's disability, investigate his complaints, or engage in the interactive process, and its decision to terminate him for behavior caused by his disability, constitute violations of well-established public policy.

139.     California courts recognize that terminating an employee for exercising rights under FEHA and the ADA constitutes wrongful discharge in violation of public policy. See:

- *Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635;
- *Stevenson v. Superior Court* (1997) 16 Cal.4th 880 (termination for exercising FEHA rights actionable under common law).

140.     As a direct and proximate result of Defendants' unlawful and retaliatory termination of Plaintiff in violation of public policy, Plaintiff has suffered:

- Loss of income, employment benefits, and future earning potential;
- Severe emotional distress, humiliation, and trauma;

29

- Reputational harm within the workplace and broader job market;
- Medical and psychological treatment expenses.

141.    Defendants' termination of Plaintiff was carried out with fraud, oppression, and malice, and in willful disregard of his legal rights, entitling Plaintiff to an award of punitive damages under California law.

142.    Plaintiff further seeks all available remedies, including:

- Back pay and front pay;
- Compensatory damages;
- General damages for emotional distress;
- Punitive damages;
- Attorneys' fees and costs where recoverable under related statutory claims.

**EIGHTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

(Against All Defendants)

143.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 142 as though fully set forth herein.

144.    Under California law, a claim for Intentional Infliction of Emotional Distress (IIED) requires proof of the following elements:

145.    Extreme and outrageous conduct by the defendant;

146.    Intention to cause, or reckless disregard of the probability of causing, emotional distress;

147.    Severe emotional distress suffered by the plaintiff; and

148.    Actual and proximate causation.

See *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050; *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965.

149.    Beginning in or around late 2023 and continuing until Plaintiff's termination on March 5, 2025, Defendants engaged in a sustained pattern of extreme and outrageous conduct, including:

30

- Ignoring Plaintiff's repeated complaints of disability-based bullying and threats by coworkers;
- Falsely disciplining Plaintiff for expressive behaviors tied to his autism;
- Treating Plaintiff's mental and developmental disability as a disciplinary issue;
- Refusing to offer support or intervention after Plaintiff escalated internally and externally;
- Terminating Plaintiff for disability-related conduct under the false label of "aggression," and
- Contesting Plaintiff's unemployment benefits with false and stigmatizing claims to the Employment Development Department.

146.    This conduct exceeded the bounds of behavior tolerated in a civilized society. Defendants had actual knowledge of Plaintiff's disabling conditions, including Autism Spectrum Disorder and Anxiety, and were repeatedly notified that the conduct of coworkers—particularly Eric Divaldo, Joseph Benitez, and others—was causing Plaintiff extreme emotional harm. Rather than protect Plaintiff, Defendants retaliated against him and removed him from employment.

147.    The decision by HR personnel, including Robert Garcia and Briana Lopez, to discipline and terminate Plaintiff while excusing the misconduct of known aggressors, and to distort Plaintiff's disability-related expressions as misconduct, reflects a reckless disregard for Plaintiff's mental health and emotional safety.

148.    Defendants' failure to act on documented threats—including one coworker stating he would spread sexual rumors about Plaintiff—combined with public workplace humiliation, active exclusion, and malicious rumors, caused Plaintiff to experience profound anxiety, depression, shame, and emotional deterioration, including symptoms consistent with Post-Traumatic Stress Disorder.

149.    Plaintiff is a particularly vulnerable individual, and Defendants knew or should have known that failing to accommodate his neurodivergent needs and subjecting him to discipline and termination in this context would cause severe psychological harm.

150.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer:

31

COMPLAINT

- Severe emotional distress including anxiety, panic, despair, insomnia, and psychological trauma;

- Aggravation of his pre-existing mental health conditions;

- Loss of enjoyment of life and dignity;

- Need for continued therapy, medication (e.g., Zoloft), and professional support.

151.    The conduct of Defendants was intentional, malicious, oppressive, and carried out with a conscious disregard for Plaintiff's rights and well-being. Plaintiff is therefore entitled to recover:

- Compensatory damages;

- General damages for pain and suffering;

- Punitive damages under Civil Code § 3294; and

- Any and all other relief the Court deems just and proper.

**NINTH CAUSE OF ACTION**

**Negligent Hiring, Supervision, and Retention**

(Against All Defendants)

152.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 151 as though fully set forth herein.

153.    Under California law, an employer is liable for negligent hiring, supervision, or retention when it knew or should have known that an employee or agent posed a particular risk of harm and failed to take reasonable steps to prevent that harm. See:

- *Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038;

- *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861.

154.    At all relevant times, Defendants Amazon.com, Inc. and its subsidiaries employed or retained:

- Robert Garcia (HR Manager),

- Briana Lopez (HR Representative),

- Matthew [last name unknown] (HR staff),

32

- Eric Divaldo, Joseph Benitez, Vanessa Ibarra, and Corina [last name unknown] (warehouse associates and shift leaders),

each of whom played a central role in either directly harassing Plaintiff or failing to act on documented misconduct against him.

155.    Amazon had actual and constructive knowledge of the serious behavioral risks posed by these employees based on:

- Internal reports filed by Plaintiff on November 8 and November 14, 2024, regarding Eric's threats and retaliation;

- Plaintiff's written witness statement forms reporting sabotage, bullying, and exclusion;

- Escalations to HR about fabricated complaints, false rumors, and threats of reputational smearing;

- Reports that certain coworkers were drinking on the job, taking extended unauthorized breaks, and targeting Plaintiff for exclusion from team roles.

156.    Rather than investigate, discipline, or reassign the offending employees, Amazon ratified the conduct and allowed the hostile workplace conditions to continue. More egregiously, Amazon's HR personnel disciplined Plaintiff—the known neurodivergent complainant—based on expressive conduct tied to his autism, while excusing repeat violations by his coworkers.

157.    Amazon's failure to supervise, discipline, or properly train its HR staff and warehouse leadership was negligent and reckless, especially in light of:

- Jared White's known vulnerability as an autistic and anxious employee;

- The repetitive and escalating nature of the misconduct;

- The foreseeability that unchecked bullying and retaliation would result in emotional harm, psychological breakdown, and eventual termination.

158.    Defendants breached their duty of care by:

- Retaining employees known to engage in abusive and discriminatory behavior;

- Failing to provide basic anti-harassment or disability sensitivity training;

COMPLAINT

- Entrusting HR functions to individuals who responded to protected complaints with retaliation and indifference;
- Ignoring Plaintiff's disability-related needs and complaints until the hostile environment caused irreversible harm.

159.    As a direct and proximate result of Defendants' negligent hiring, supervision, and retention of these individuals, Plaintiff suffered:

- Severe emotional distress and trauma;
- Aggravation of pre-existing medical and psychological conditions;
- Loss of employment and professional standing;
- Economic damages including lost wages and benefits.

160.    Plaintiff is entitled to recover all available compensatory damages, general damages, and all other relief as may be awarded by a jury. Punitive damages may be warranted under related causes of action due to Defendants' ratification and malicious indifference to known dangers.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and applicable provisions of California law, Plaintiff Jared White hereby demands a trial by jury on all causes of action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff **Jared White** respectfully prays for judgment against all Defendants, jointly and severally, as follows:

**A. Economic and Compensatory Damages**

1. For back pay, including lost wages, benefits, and bonuses from the date of termination to the date of judgment;

2. For front pay representing future loss of earnings and benefits, in lieu of reinstatement if reinstatement is deemed impracticable;

3. For reinstatement to Plaintiff's former position or a comparable role, where equitable and appropriate;

4.  For compensation for out-of-pocket expenses, including medical and psychological treatment, job search costs, and related economic losses;

**B. General and Emotional Distress Damages**

5.  For non-economic damages, including pain, suffering, anxiety, depression, humiliation, and emotional distress, in an amount according to proof;

**C. Statutory and Civil Penalties**

6.  For civil penalties under California Labor Code § 98.6(b)(3) and other applicable provisions;

**D. Punitive and Exemplary Damages**

7.  For punitive damages under:
    o   Government Code § 12965(c) (FEHA),
    o   Civil Code § 3294 (common law tort claims),
    o   42 U.S.C. § 1981a(b)(1) (ADA),
        based on Defendants' willful, malicious, fraudulent, and oppressive conduct;

**E. Injunctive and Declaratory Relief**

8.  For injunctive relief prohibiting Defendants from continuing discriminatory and retaliatory practices against disabled employees;

9.  For declaratory relief stating that Defendants' conduct violated Plaintiff's rights under FEHA, the ADA, and California public policy;

**F. Attorneys' Fees and Costs**

10. For attorneys' fees and costs of suit incurred herein, pursuant to:
    •   Gov. Code § 12965(b),
    •   Labor Code § 218.5, and
    •   42 U.S.C. § 12205;

**G. Prejudgment and Postjudgment Interest**

11. For prejudgment and postjudgment interest at the maximum legal rate;

**H. Any Other Relief**

12. For such other and further relief as the Court may deem just, equitable, and proper under the circumstances.

35

1

2

3

4

5    DATED: May 29, 2025

6                                                    /s/ Christopher K. Monelt

7                                              Christopher K. Monelt
                                               Attorney for the Plaintiff
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                         36